123 N.J. Super. 135 (1973)
301 A.2d 781
PLANNING BOARD OF THE TOWNSHIP OF WEST MILFORD, HENRY R. SPINNLER JR., ROGER LAPOINTE, ROGER DOUGHERTY, EDWARD NOVACK, HARRY FOX AND GEORGE SMITH, PLAINTIFFS,
v.
TOWNSHIP COUNCIL OF THE TOWNSHIP OF WEST MILFORD, CHARLES DE LADE, MAYOR; ROBERT L. LITTLE, COUNCILMAN, EDWARD GOLA, COUNCILMAN, JOHN ANDRESAN, COUNCILMAN, AND PETER F. ROAN, TOWNSHIP MANAGER, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 5, 1973.
*139 Messrs. Orbe and Nugent, attorneys for plaintiffs (Mr. John F. Darcy, on the brief).
Messrs. Wallisch and Wallisch, attorneys for defendants (Mr. Louis Wallisch, Jr., on the brief).
SCHWARTZ, L., J.D.C., Temporarily Assigned.
This is an action in lieu of prerogative writs brought by the Planning Board of West Milford and its members in their individual capacity, challenging an ordinance adopted by the township council empowering the municipal manager to appoint the attorney for the planning board.
The parties have stipulated that the planning board was duly constituted by virtue of N.J.S.A. 40:55-1.1 et seq. and the ordinances of the township.
Since 1969 the municipality has been governed by the Council-Manager Plan D of the Optional Municipal Charter Law, known as the Faulkner Act, under Article 12 of N.J.S.A. 40:69A-109 et seq., implemented by an ordinance adopted pursuant thereto establishing an administrative code.
Although the code did not provide for the office of attorney for the planning board, nor did any other ordinance so provide, nevertheless the board appointed its own counsel and compensated him from funds appropriated for such purpose by the governing body.
On October 11, 1972 the planning board appointed Terence P. Corcoran as its attorney and notified the council of such appointment. The board was advised by the council on *140 October 16, 1972 that such appointment was without authority.
On November 3, 1972 the township council adopted an ordinance as an amendment to the administrative code creating the office of attorney for the planning board, delineating the duties of the office and providing that "he shall be appointed by the Township Manager and shall hold office during his pleasure."
Before reviewing the issue of whether the authority to appoint the attorney for the board resides in or may be delegated to the township manager in accordance with N.J.S.A. 40:69A-109 et seq., or whether such power resides in the planning board itself, it would be well to consider the necessity of adopting an ordinance for this purpose in the first place.
N.J.S.A. 40:55-1.5 (L. 1953, c. 433, § 5) provides:
The planning board shall elect a chairman from the members of Class IV and create and fill such other offices as it may determine. It may employ experts and a staff, and pay for their services and for such other expenses as may be necessary and proper, not exceeding in all, exclusive of gifts, the amount appropriated by the governing body for its use. [Emphasis added]
The object of the statute was similar to N.J.S.A. 40:55-36.2 in which, by L. 1955, c. 126, § 2, the board adjustment was authorized to "employ" an attorney, and by L. 1965, c. 215, § 2 which authorized it to "appoint" an attorney.
The use in the statute of the terms "create," "fill such other offices" and "employ experts and a staff" does not connote mandatory direction in the legislative intention. The office of planning board attorney is not legislative in origin, as is the office of tax assessor, for instance, which does not depend upon a municipal ordinance for its creation. See Ream v. Kuhlman, 112 N.J. Super. 175, 191 (App. Div. 1970).
In Wagner v. Lodi, 56 N.J. Super. 204 (App. Div. 1959), the court held that even though the statute read *141 "The municipal council shall appoint * * * an attorney" (emphasis added), this language did not create the office of municipal attorney. See also Jersey City v. Dept. of Civil Service, 7 N.J. 509, 522 (1951). Cf. Talty v. Board of Education, Hoboken 10 N.J. 69, 71 (1952). The court in Wagner concluded that since the office of borough attorney had not been created by ordinance, "such office is non-existent in the Borough of Lodi, and there is no office to which respondent may claim tenure."
Unless when required by statute, "we do not perceive in these provisions a legislative direction for the appointment * * * even though the post be deemed unnecessary. The need is a matter for the discretion of the local authority. We find in the cited act no suggestion of a legislative determination of the need without regard to local conditions." Handlon v. Belleville, 4 N.J. 99, 108 (1950).
Tomko v. Vissers, 21 N.J. 226, 237-238 (1956), was not an expression by the Supreme Court that a board of adjustment had the power to create the office of attorney. The decision merely illustrated that the board had the "statutory equipment" to discharge in a proper manner its responsibility to pass upon applications for variances when it stated that the board "may employ an attorney and clerical personnel to fulfill its function."
The language in the Planning Act had a similar legal effect with respect to the powers of the planning board.
The particular use of the words "create * * * offices" in the statute should not be interpreted as vesting in the planning board the self-executing and exclusive power to establish new offices.
The Home Rule Act (N.J.S.A. 40:48-1) provides in part:
The governing body of every municipality may make, amend, repeal and enforce ordinances to:

* * * * * * * *
3. Prescribe and define, except as otherwise provided by law, the duties and terms of office or employment, of all officers and employees; *142 and to provide for the employment and compensation of such officials and employees, in addition to those provided for by statute, as may be deemed necessary for the efficient conduct of the affairs of the municipality; [Emphasis added]

* * * * * * * *
In Nolan v. Witkowski, 56 N.J. Super. 480 (App. Div. 1959), the court cited with approval the reference to N.J.S.A. 40:48-1 in Davaillon v. Elizabeth, 121 N.J.L. 380, 381 (Sup. Ct. 1938):
The legislature has decreed that this delegated power to create municipal offices and positions, and to prescribe the compensation and the duties appertaining thereto, involving as it does an increase of the financial burden of local government, shall be exercised only by ordinance. [56 N.J. Super. at 495]
Except for statutory officers, it is established that the adoption of an ordinance creating an office is a sine qua non to the appointment of an officer by the governing body. Handlon v. Belleville, Jersey City v. Dept. of Civil Service, Wagner v. Lodi, all supra. The planning board, being a quasi-judicial or administrative body, lacks the authority to adopt ordinances. Under N.J.S.A. 40:55-1.5 it would be authorized to appoint its officers after the creation of the offices by the ordinance of the governing body.
An attorney whose skills are regularly utilized in advising a planning board holds an "office." See Jersey City v. Dept. of Civil Service, 7 N.J. 509, 524-525 (1951); Wagner v. Lodi, 56 N.J. Super. 204, 206 (App. Div. 1959), cert. den. 30 N.J. 599 (1959); O'Connor v. Union City, 117 N.J. Super. 575, 578 (Law Div. 1971); Fredericks v. Board of Health, 82 N.J.L. 200 (Sup. Ct. 1912). Compare Kovalycsik v. Garfield, 58 N.J. Super. 229, 236-237 (App. Div. 1959).
N.J.S.A. 40:48-1 and N.J.S.A. 40:55-1.5 are in pari materia and must be construed together so as to effectuate the legislative policy. The rule that without a de jure office there can be no de jure officer (Jersey City v. *143 Dept. of Civil Service, supra) applies here. Therefore, the adoption by the governing body of an ordinance creating the office of attorney for the planning board was essential no matter which agency made the appointment.
Even if a salary ordinance was adopted by the governing body in compliance with N.J.S.A. 40:46-23, or if funds for legal representation were provided in the budget, these acts could not by implication create the office or validate an appointment to an office not created by an ordinance. Weaver v. North Bergen Tp., 10 N.J. Super. 96 (App. Div. 1950).
Before entering upon a consideration of the appointive power of a municipal manager under the Optional Municipal Charter Law vis-a-vis the appointive power of the quasi-judicial planning board, it is necessary to fully understand the role which the Legislature intended the board to play in our municipal governmental structure when it adopted the Planning Act in 1930 and when the statute was amended in 1948, substantially amended in 1953 and amended since, investing the board with considerable powers.
The planning board may adopt and amend a master plan for the present and future development of the community. N.J.S.A. 40:55-1.10, 40:55-1.11.
Thereafter, public agencies shall refer for review and recommendation to the planning board their proposals to expend funds for municipal projects and their proposals for the adoption of an official map and amendments thereto. N.J.S.A. 40:55-1.13, 40:55-1.35.
The governing body may refer to it other matters, including approval of site plans over which other municipal agencies have no power of review (Arlington Ass'n v. Tp. Coun. Parsippany-Troy Hills, 118 N.J. Super. 418, 420 (App. Div. 1972)), and, when requested, prepare reports bearng upon applications for variance. N.J.S.A. 40:55-1.13.
The governing body may empower the planning board to approve or recommend approval of subdivision applications, *144 provisions for improvements therein, including plans for new streets and reservation of areas for schools and parks. N.J.S.A. 40:55-1.14 et seq.
The statute provides for restraint of alienation of real property before subdivision is approved by the planning board. N.J.S.A. 40:55-1.23.
The board shall make a determination as to blighted areas, subject to governing body approval. N.J.S.A. 40: 55-21.1 et seq.
A condition precedent for adoption of zoning ordinances or amendments by the governing body is reference of the proposal to the planning board. N.J.S.A. 40:55-33 and 35.
In fulfilling these weighty responsibilities, this quasi-judicial agency must apply principles of due process of law in terms of notice, receipt of evidence and recordation thereof, and arrive at a decision based upon factual findings and expressing the reasons for its determination. N.J.S.A. 40:55-1.1 et seq.
In Handlon v. Belleville, 4 N.J. 99 (1950), Justice Heher analogized the authority of courts of general jurisdiction to administrative tribunals with quasi-judicial powers. The function of such administrative agencies "partakes of the judicial," even though its exercise is styled "quasi-judicial."
In Dolan v. DeCapua, 16 N.J. 599, 613 (1954), the opinion of the court was that the statutory scheme was to keep the quasi-judicial board of adjustment so independent of the governing body that the municipal attorney might be precluded from advising it.
In Lynch v. Hillsdale, 136 N.J.L. 129 (Sup. Ct. 1947), aff'd 137 N.J.L. 280 (E. & A. 1948), Rogoff v. Tufariello, 106 N.J. Super. 303 (App. Div. 1969), and Kurowski v. Bd. of Adjustment, Bayonne, 11 N.J. Super. 433 (App. Div. 1951), the quasi-judicial board of adjustment was described as a statutory creation for the effectuation of legislative policy, rather than being the agent of the local governing body.
*145 Matters committed to the quasi-judicial board of adjustment by statute, and the exercise of its power, may not be circumscribed, altered or extended by the municipal governing body. Saddle River Country Day School v. Saddle River, 51 N.J. Super. 589 (App. Div. 1958), aff'd 29 N.J. 468 (1959).
Reference to the board of adjustment in this opinion is pertinent, because a planning board, in many areas, particularly when passing upon an application for subdivision, is acting in a quasi-judicial capacity in the same way as a board of adjustment under N.J.S.A. 40:55-39. Kotlarich v. Ramsey, 51 N.J. Super. 520, 540-542 (App. Div. 1958).
Even when engaged in proceedings that are legislative in character (blighted area determinations) rather than judicial, there is no doubt that the statute contemplates independent action and determination on the part of the planning board, to the extent that the city solicitor, an agent of the governing body, should not participate in such hearings. Wilson v. Long Branch, 27 N.J. 360, 396 (1958).
The judicial nature of quasi-judicial agencies was further recognized when the New Jersey Supreme Court advised a governing body, which was sitting as a quasi-judicial agency, to apply the New Jersey Court Rules (1969) in considering the timeliness of appeals. Princeton Res. Lands v. Princeton Tp. Plan. Bd., 112 N.J. Super. 467, 471 (App. Div. 1970).
This, then, is the character of the planning board, which the Legislature intended to be a quasi-judicial, independent and, to some extent, an autonomous board.
The court does not find that the issue is whether conflict of interest taints the attorney appointee of a municipal manager to a quasi-judicial board. The basic issue is whether the independence of the board shall be maintained. Such independence of judgment required by an agency exercising quasi-judicial functions is aptly described in 4 Cooley, Taxation, § 1621, at 3239 (4th ed. 1929) with respect to tax assessors and applies to this case with equal vigor:
*146 They who are intrusted to judge ought to be free from vexation, that they may determine without fear; the law requires courage in a judge, and therefore provides security for the support of that courage. * * * And this principle of protection is not limited in its application to the judges of courts, but extends to all officers who have duties to perform which in their nature are judicial, and which are to be performed according to the dictates of their judgment.
This court has demonstrated that except as may be enunciated in a particular form of municipal government statute, after the office is created by ordinance of the governing body, the planning board alone may appoint its attorney by virtue of N.J.S.A. 40:55-1.5 and in view of the autonomy in which the board functions.
Does this rule prevail in municipalities which have adopted the Faulkner Act? "Judicial resolution of such matters must be guided by only one principle: legislative intent." Clifton v. Zweir, 36 N.J. 309, 322 (1962).
Article 12 of the Faulkner Act, N.J.S.A. 40:69A-109 et seq., "Council-Manager Plan D," by which West Milford is governed, provides in substance that a municipality adopting such form of government shall be governed by its provisions together with those of Article 2, N.J.S.A. 40:69A-26 to 30, dealing with incorporation and powers; sections 9-6 through 9-18 of Article 9, N.J.S.A. 40:69A-86 to 98, dealing with council and manager; Article 17, N.J.S.A. 40:69A-150 to 210, containing "Additional Provisions Common to Optional Plans."
By the terms of N.J.S.A. 40:69A-26 such municipality is governed by "all applicable provisions of general law." N.J.S.A. 40:69A-28 defines general law to mean "any law or provision of law, not inconsistent with this act, heretofore or hereafter enacted which is by its terms applicable or available to all municipalities," plus certain enumerated laws not germane to this matter.
The Legislature has not stated with specificity in the Faulkner Act (1950) who shall appoint attorneys for respective boards, and the issue to be determined is whether in this *147 respect the provision of the Planning Act, N.J.S.A. 40:55-1.5 (1953), is a general law "not inconsistent" with the Faulkner Act.
The municipal manager derives his power to appoint under N.J.S.A. 40:69A-95, which in relevant part provides:
The municipal manager shall:
(a) be the chief executive and administrative official of the municipality; * * *

* * * * * * * *
(c) appoint and remove a deputy manager if one be authorized by the council, all department heads and all other officers, subordinates, and assistants for whose selection or removal no other method is provided in this article (§§ 40:69A-81 to 98) * * *. [Emphasis added]
This section should be considered in conjunction with the language of N.J.S.A. 40:69A-88 and 89. The former reads:
All powers of the municipality and the determination of all matters of policy shall be vested in the municipal council, except as otherwise provided by this act (§§ 40:69A-1 to 210) or by general law. * * * [Emphasis added]
The latter states:
The municipal council shall appoint a municipal manager and a municipal clerk. Both of such offices may be held by the same person. The council may provide for the manner of appointment of a municipal attorney, any planning board, zoning board of adjustment or personnel board in the municipality, and may create commissions and other bodies with advisory powers. * * * [Emphasis added]
It is significant that under the Faulkner Act the municipal council may appoint a planning board and board of adjustment, which are quasi-policy-making agencies, while the manager's appointive powers are in a distinctly separate area, that of general administration. Ream v. Kuhlman, 112 N.J. Super. 175, 184 (App. Div. 1970).
The present case is distinguishable from the effect of the Faulkner Act upon the appointment of officers of a municipal *148 parking authority (Brdw'y Nat., etc., Bayonne v. Parking Auth., Bayonne, 40 N.J. 227 (1963)), and a municipal utilities authority (Jordan v. Zidel, 40 N.J. 244 (1963)), since each of these agencies was an alter ego of the municipality in the fulfillment of essential municipal functions, and it would not be conducive to good government to have commissioners who were unfriendly and not in political rapport with other municipal agencies. Certainly, this standard would offend the judicially functioning climate of the independent planning board.
This case is distinguishable from Myers v. Cedar Grove Tp., 36 N.J. 51 (1961), where the court decided that since nowhere in the Faulkner Act was the board of health specifically excepted from the broad authority of the manager to appoint officers, under the liberal construction of grants of power in favor of the municipality, N.J.S.A. 40:69A-30, the Legislature intended to permit the local government to abolish the independent board of health, leaving appointment of health officials to the manager. "N.J.S.A. 26-1.1 [26:1-1] and N.J.S.A. 26:3-1 provide that such body need not be an autonomous board of health."
This court need not decide whether this result would be reached with respect to officers of planning boards in municipalities governed by charter or manager forms of government which do not specifically except or exclude such quasi-judicial agencies from manager appointment.
However, under the form of government adopted by West Milford, the planning board was specifically referred to in N.J.S.A. 40:69A-89 and is a method "provided in this article." Not only is the "method" provided but the court, in Ream v. Kuhlman, supra, at 185, stated that this section "requires" the appointment by the council, rather than the manager, of members of quasi-judicial and policy-making agencies like the planning board. Also see Mentus v. Irvington, 79 N.J. Super. 465 (Law Div. 1963).
The court in Townsend v. Pequannock Tp., 47 N.J. Super. 294, 301 (Law Div. 1957), said the meaning of "manner of *149 appointment" by the council of members of the planning board "is not clear." Yet it was satisfied that the boards mentioned in N.J.S.A. 40:69A-89, i.e., planning board and board of adjustment, are not in the "administrative" field and not under the direction of the manager. Similarly, the legal advisors to the respective quasi-judicial and policy-making boards act under the sole direction of these agencies rather than under the control of the manager, unless the court determines that the manager may "remove" them by virtue of N.J.S.A. 40:69A-95(c).
The catch-all paragraph of N.J.S.A. 40:69A-95 is meaningful here:
The municipal manager shall be responsible to the council for carrying out all policies established by it and for the proper administration of all affairs of the municipality within the jurisdiction of the council.
Policies and judgments of the planning board are not established by the council and major functions of the planning board are not "affairs of the municipality within the jurisdiction of the council." Once members of this board are appointed, they are clothed with independence of judgment.
This independence is such that although the Faulkner Act, N.J.S.A. 40:69A-184, permits the voters to "propose any ordinance and may adopt or reject the same at the polls, such power being known as the initiative," this would not apply to zoning ordinances because it would interfere with planning board functions under N.J.S.A. 40:55-35. In adopting the Faulkner Act the Legislature did not intend to disregard the planning board's self-sufficiency. Smith v. Livingston Tp., 106 N.J. Super. 444 (Ch. Div. 1969).
In determining the source of appointment of the members of the board of adjustment in a municipality governed under another Faulkner Act form of government, the court in Mentus v. Irvington, supra, 79 N.J. Super. at 477, said the reason why the Legislature found it necessary to specifically provide in N.J.S.A. 40:69A-89 for the appointment of the *150 members of the board of adjustment by the governing body was to avoid the interpretation of the broad language of N.J.S.A. 40:69A-95 as abolishing the appointive provisions in the Zoning Act. The same doubtlessly applies to the Planning Act.
The New Jersey Commission on Municipal Government which prepared the report on the proposed Faulkner Act in 1949 concluded that such quasi-independent boards created and governed by general law, like planning and zoning boards, should be continued "in those fields in which boards or commissions are essential to carry out particular functions or discharge special trusts." Final Report at 13, 43.
The plainest proof of the continuing concern and interest of the Legislature that the planning board remain independent in its choice of officers and employees was the reenactment of N.J.S.A. 40:55-1.5 in 1953, providing for appointment by the planning board of its officers (original enactment in 1930 as R.S. 40:55-4), three years after the adoption of the Faulkner Act.
The Legislature is presumed to be familiar with its own enactments and the judicial decisions relating to them, and to have passed or preserved cognate laws with the intention that they be construed to serve a useful and consistent purpose. Wright v. South Orange, 79 N.J. Super. 96, 102 (App. Div. 1963). The courts have the duty of reconciling them so as to give effect to both expressions of the lawmakers' will. State v. Federanko, 26 N.J. 119 (1958). So a reasonable conclusion may be drawn that the design was to invest the manager with appointive powers as far as administrative officers of the municipality are concerned and yet to give efficacy to the hands of quasi-judicial bodies so that they might fulfill their impartial functions without dilution by appointees of other municipal agents.
The court is satisfied that N.J.S.A. 40:55-1.5 is not inconsistent with the provisions of the Council-Manager Plan D of the Optional Municipal Charter Law, and that in enacting the latter the Legislature did not by implication *151 repeal the statute specifically empowering the planning board to appoint its officers. Therefore, the provision in the ordinance authorizing the appointment and removal of the planning board attorney by the municipal manager is ultra vires.
What effect does this have upon the balance of the ordinance creating the office? Where the provisions of an ordinance are separable, the invalidity of one of its separable parts will not invalidate the entire ordinance. Adams Newark Theatre Co. v. Newark, 22 N.J. 472, aff'd 354 U.S. 931, 77 S.Ct. 1395, 1 L.Ed.2d 1533 (1956).
In order that an invalid provision of an ordinance may be deemed severable, there must be both legislative intent that it be severable and the remaining provisions must be functionally self-sufficient or contain the essentials of a complete enactment. Swimming River Golf & Country Club v. New Shrewsbury, 30 N.J. 132, 137 (1959); Gilman v. Newark, 73 N.J. Super. 562, 601 (Law Div. 1962).
The invalid provision of this ordinance and the valid provisions are not dependent upon each other, not interwoven so that the valid cannot stand alone, and the excision of the tainted feature will not impair the general purpose of the ordinance to create the office. Angermeier v. Sea Girt, 27 N.J. 298, 311 (1958); Affiliated Distillers Brands Corp. v. Sills, 56 N.J. 251 (1970).
Therefore, the ordinance is effective to establish the office of attorney for the planning board and, as heretofore indicated, the planning board is empowered to appoint the occupant of the office.